1      CHIEF JUDGE MARSHA J. PECHMAN

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9  UNITED STATES OF AMERICA,        )    NO. CR13-00168MJP
                                    )
10          Plaintiff,              )
                                    )
11      vs.                         )
                                    )    DEFENDANT'S SENTENCING
12  DEBRA A. AARON,                 )    MEMORANDUM
                                    )
13          Defendant.              )
                                    )
14  _____ )

15

16         Debra Aaron, by her attorney, Timothy Lohraff, submits this sentencing

17  memorandum in mitigation of sentencing at a hearing before this Court on July 8, 2014.

18  Ms. Aaron pled guilty to one count of Conspiracy to Defraud the Government in violation

19  of 18 U.S.C. § 286 and one count of False, Fictitious or Fraudulent Claim in violation of 18

20  U.S.C. § 287 and 2. Mrs. Aaron is requesting that the Court impose a term of 60 months of

21  probation with the first 24 months spent on home detention.

    **I.      INTRODUCTION**
22
           Mr. and Mrs. Aaron share few characteristics of most defendants who appear before
23
    this Court to be sentenced on federal criminal charges.  They have no criminal background
24
    whatsoever.  They are over the age of 30.  They are educated professionals who worked
25
    over the course of their lives maintaining successful careers in federal agencies.  They have
26

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

1  grown children.  And yet they find themselves facing time in federal prison.  It is a

2  conundrum that would puzzle anyone.  Why are these two people before the Court facing

3  time in prison?

4        Debra Aaron and her husband Samuel were drawn into an ill-advised venture to

5  utilize a tax avoidance scheme that they learned about at several seminars they attended in

6  early 2008.  The seminars were given by 'professional' tax avoidance scam artists (although

7  the Aarons did not know this at the time).  Neither of them created, thought up or invented

8  the 1099 OID write-off scheme that they participated in.  Nor were they the only people in

9  the nation caught up in the machinations of tax scam purveyors like Winston Shrout.

10        Mrs. Aaron recognizes that her behavior was not only exceedingly foolish, but

11  actually criminal. She cannot believe that she allowed herself to get caught up in the

12  rhetoric, outlines, hand-outs and entire oeuvre of professional con men who earned a great

13  deal of money by conducting 'seminars' on tax savings schemes across the United States.

14        As Mrs. Aaron notes in her letter to the Court, "as I look back today I am very

15  disappointed and embarrassed that I allowed myself to be taken in by these individuals and

16  followed their instructions which seemed reasonable at the time." (Mrs. Aaron's letter

17  addressed to the Court attached as Exhibit 1)

18        The challenge facing the Court is to balance the factors set forth in 18 U.S.C. §

19  3553(a) to arrive at a sentence in this matter that is "[s]ufficient, but not greater than

20  necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  The

21  defense asks the Court to strike the balance by tempering the foolish and wrong behavior

22  of Mrs. Aaron and her husband with mercy and provide a punishment that allows Mrs.

23  Aaron to pay for her misdeeds without punitively creating a situation in which she or her

24  husband's health is significantly impacted.

25  //

26

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

DEFENDANT'S SENTENCING MEMORANDUM - 2
(Debra Aaron, CR13-00168-MJP)

## II.    MS. AARON'S BACKGROUND

Mrs. Aaron is 60 years old.  She grew up in Washington State in a comparatively healthy household, although her father was a practicing alcoholic which obviously negatively impacted the family, particularly Debra's mother who suffered from poor health much of her life.  She left the family home at 18 when she found work in Seattle.

### A.    Education and Work History

Mrs. Aaron graduated from high school in Port Orchard in 1972. She subsequently obtained her B.S. in business administration at City University in 1981.  Later in life she obtained a graduate degree, a M.A. in applied behavioral science from the Leadership Institute of Seattle, which is affiliated with Bastyr College, also in Seattle.

Since leaving home at 18 to work, Mrs. Aaron has basically worked her entire adult life to help support herself and her family.  She worked at the Bonneville Power Administration (BPA), a federal nonprofit agency under the aegis of the United States Department of Energy from 1972 to 1978.  From 1978 to 1981 she worked at HUD as an Equal Opportunity Specialist.  From 1981 to 1986, she again worked for the BPA as a Personnel Management Specialist and later as an Equal Employment Specialist.

From 1986 to 1989 she was a Program Specialist with the U.S. Department of Transportation, Federal Aviation Administration (FAA), and from 1989 to 2006, continued to work for the FAA as a Management and Program Analyst.  She returned to federal employment from 2011 until 2012, working at the U.S. Department of Transportation, Federal Highway Administration. (Debra Aaron's resume attached as Exhibit 2).

### B.    The Blessing Project

The Blessing Project (TBP) is an LLC that Debra created in 2006 to help indigenous women in third world countries.  TBP works by purchasing raw materials such as beads, paper and yarn from women in foreign countries.  The sales provide income to the women selling the raw materials and help them stay in business. TBP then utilizes volunteers and

DEFENDANT'S SENTENCING MEMORANDUM - 3
(Debra Aaron, CR13-00168-MJP)

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

craftspeople in the United States to make artistic items out of the purchased raw materials and sell the items to further maintain the project and allow for more purchases of raw materials from the indigenous women.

The idea for TBP first occurred to Debra in 2005 after reading an article by Rebecca Lolosoli in the Seattle Times.  Rebecca Lolosoli is a matriarch of the Umoja Women's Village in Kenya and an international advocate for women's rights.[1]  It should be noted that one of the people involved in the early creation stages of the TBP was a woman that Debra trusted deeply as a friend and spiritual confidant named Morganne Rayne. Rayne would later encourage and instigate Debra's involvement in the whole 1099 OID tax avoidance scheme.

The TBP was formally created as an LLC in September 2006.  (See Exhibit 3, Timeline for The Blessing Project). In October of 2006, Debra and her husband Samuel traveled to Kenya and met with Rebecca Lolosoli and toured the Kazuri Bead factory. Subsequently, Kazuri Beads and Umoja, both beading groups, became the first and second "projects" for TBP.

In November 2006, Debra wanted to devote her energies full time to developing and growing TBP.  She resigned from the FAA and became the CEO of TBP.  TBP website (www.theblessingproject.com) was formed and activated in February 2007. By then, Debra was already selling the three dimensional art cards to raise money to purchase materials. She continued to develop new ideas for products such as shadowboxes to be used to raise money.  All of the products sold on the website are made by people in the U.S. incorporating the purchased raw materials from the various women's cooperatives and artisans that TBP denotes as "projects." (See Exhibit 4, "The Blessing Project: Our Projects Around the Globe").

---

[1]   See e.g., http://www.halftheskymovement.org/pages/rebecca-lolosoli.

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

DEFENDANT'S SENTENCING MEMORANDUM - 4
(Debra Aaron, CR13-00168-MJP)

Debra and Samuel begin to travel to sell products and market TBP.  In February 2007 they traveled to Miami to market at the United Centers for Spiritual Living and sold $834 worth of items.  Debra also attended events closer to home in Washington State selling items and raising awareness about the existence of TBP.  In March, 2007, Bead for Life, a Uganda based cooperative was added as TBP project number three.

In April 2007 Debra attended a conference on Orcas Island that generated $1,642 in sales of TBP crafts. In October 2007, Debra and Samuel traveled to Nicaragua and met with the women who run Olocika, a women's cooperative in Esteli, Nicaragua.  Olocika make paper from native plant fibers they collect and process.  In February 2008, TBP added three new projects all producing yarn: Mango Moon in Nepal; Be Sweet in South Africa and Manos del Uruguay in South America.

Debra continued to go to events and sell projects and market TBP.  In September 2008 she traveled to Sacramento, California to appear at a Healing Journeys event and garnered sales of $2,750 ($550 of which was donated to Healing Journeys).  In December 2008 she appeared at the Victorian Holiday Show in Puyallup and sold $2,337 worth of items. In March 2010, TBP adopted its first jewelry project, Freedom Stones, based on their mission of eliminating and preventing human trafficking through livelihood projects that transform and develop communities in Ghana, Thailand and Cambodia.

TBP continues as an on-going project.  The website is still active.  The government portrays TBP as a trumped up front for receiving money from individuals that Mrs. Aaron helped prepare and file tax forms using the 1099 OID scheme.  Mrs. Aaron does not dispute the fact that money from some of the people she filed tax returns for was put into TBP coffers.  She deeply regrets this. However, it does not denigrate the fact that TBP itself is an organization created to do good and has achieved good results.

## C.    Mr. and Mrs. Aaron's Health

Mrs. Aaron has some significant health issues.  Most seriously, she is diabetic. She

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

DEFENDANT'S SENTENCING MEMORANDUM - 5
(Debra Aaron, CR13-00168-MJP)

currently is able to manage her diabetes with medication.  Perhaps of greater importance is the health of her husband Samuel.  Mr. Aaron is seriously ill.  He suffers from a rare disease called POEMS, an acronym for the most common signs and symptions of the syndrome: *polyneuropathy* (nerve damage causing numbness, tingling and weakness in the hands and feet); *organomegaly* (organ enlargement of liver, lymph nodes or spleen); *endocrinopathy* (abnormal hormone levels); *monoclonal protein* (a collection of abnormal blood proteins (immunoglobulins) made from bone marrow cells called plasma cells; *skin changes* (increased skin pigment, increased body hair, thickening of the skin and whitening of the nails).

Mr Aaron has significant difficulties moving around. Getting to a grocery store or doctor, for example, without the help of some one would be impossible for him.  If Debra is sentenced to time in prison, it will be a major impediment to Mr. Aaron's continued health and livelihood, as he is unable to perform many common duties and chores necessary for his maintenance.

### D.    Letters From Family

Mrs. Aaron's son and daughter have both written letters addressed to the Court on her behalf.  Jennifer Johnson, her daughter, notes that not only does Mrs. Aaron have a distinguished career working for the government, her employment history includes many awards for helping develop programs to hire and train both women and minorities.

Her son Nicholas Johnson writes that his mother Debra and stepfather Samuel provided a "positive, stable, and loving environment for me as a child and one in which any child growing up would benefit from." He further notes that, "the positive impact that they had on my life is difficult, if not impossible, to put into words but one in which I am ever thankful for."  (Letters from Jennifer Johnson and Nicholas Johnson attached as Exhibits 5 and 6).

//

DEFENDANT'S SENTENCING MEMORANDUM - 6
(Debra Aaron, CR13-00168-MJP)

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

III.   **STATUTORY FACTORS UNDER 18 U.S.C. § 3553(a)**

18 U.S.C. § 3553(a) sets forth nine factors the Court must consider in crafting a just and fair sentence. The very first sentence of the statute sets forth the lens through which the remaining factors are to be viewed: "The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection." (Emphasis added).  The first two factors require the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.

**A.     Nature of the Offense**

As noted previously, the Aarons are not the original creators of the 1099 OID tax avoidance scheme.  They are not accountants, attorneys or tax experts.  They foolishly placed their trust in national figures like Winston Shrout, whose seminars they attended, and also put their trust in local figures who advocated the use of the 1099 OID scheme, such as Debra's close friend Morganne Rayne.

**1.     Professional Purveyors of the 1099 OID Movement**

Mr. and Mrs. Aaron discovered the 1099 OID scheme by attending seminars held by Winston Shrout, a national presence who holds seminars and conferences across the country decrying the paying of taxes and advocating schemes such as the 1099 OID scheme. [2] They attended an "Advanced Seminar" with Winston Shrout, Seminars in Commerce in San Antonio Texas from February 15 to 17, 2008.  Mr. Shrout, of course, charges people to attend his seminars.

At the conference in San Antonio, they learned about using the 1099 OID scheme to avoid taxes and get money back from the IRS. On March 10, 2008, impressed by what they 'learned' at the two day live seminar, they set up a conference call with Lisa Busser

---

[2]  It is interesting to note that as the U.S. Department of Justice has instituted a national crackdown on the use of the 1099 OID scheme, Mr. Shrout no longer advertises or gives seminars about that particular tax avoidance device. See Mr. Shrout's website at:  http://www.wssic.com/.

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

who represented Shrout at his business "Solutions in Commerce." Busser and Shrout were so persuasive that  Debra actually traveled to Hillsboro, Oregon on March 26, 2008, and met privately with Winston Shrout to learn more about the 1099 OID scheme. This meeting was facilitated by Morganne Rayne.

At some point, Shrout sold them a DVD that he distributed at his national seminars titled "1099 OID–and Its Place History" [sic]. (Scan of the DVD  attached as Exhibit 7). Shrout and other 1099 OID professional speakers cite quasi legal formulations; tax code provisions; constitutional analysis and alleged historical bases of the IRS in support of their claims that using a 1099 OID scheme is both moral and legal.

In 2008 and 2009 the Aarons continued to attend conferences and seminars at which speakers propounded the use of the 1099 OID scheme and claimed it was not only legal but actually authorized by the IRS.  At these conferences they were given additional hand-outs and other materials justifying the alleged legality of this scheme.

## 2.    Timeline of Activities

The Aarons electronically filed their 1040 tax return for tax year 2007 on June 1, 2008, utilizing the OID income and withholding scheme. The original amount of OID claimed was $1,107,358.00 with $402,911.00 withheld for federal income taxes. $76,189.58 in interest was tacked on.  On June 13, 2008, they received a tax 'refund' of $723, 275.00 electronically.  On October 13, 2009, they received the first of many future communications from the IRS, a IRS Form 3552 Notice of Tax Due in the amount of $1,183,547.58.

TBP was set up in 2006, two years before the Aarons filed the illegal tax return at issue in this case.  They started purchasing materials from their projects in 2006, again two years prior to making any money from the 1099 OID scheme. (See Exhibit 8, breakdown of purchased materials by The Blessing Project from January 1, 2006 to December 31, 2013).

Debra Aaron helped approximately 30 other 1099 OID scheme believers that she met

DEFENDANT'S SENTENCING MEMORANDUM - 8
(Debra Aaron, CR13-00168-MJP)

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

either through seminars or through Morganne Rayne file tax returns utilizing the 1099 OID scheme. She filed these returns through a Filing Information Returns Electronically (FIRE) account with the IRS that she and Samuel set up through Jennick Inc., a corporation the Aarons had set up in Nevada. Some of the 30 people provided money to the Aarons for this service.

At the point in 2009 when the IRS first contacted the Aarons about their 2007 tax return, things could have been set right. Unfortunately, they were not. Continuing to believe in the legitimacy of what they had been taught at the seminars and in person by Winston Shrout and others, they continued to rely on Shrout and the other "experts" for advice in dealing with the IRS. Hence, the nonsensical "Accepted For Value" letters sent by Mr. Aaron to the IRS in 2009 in response to the IRS Notice for Tax Due. They were still drinking the Kool Aid at that point.

Eventually the enormity of what they had done became clear. Debra discerned that they had relied on faulty information. She came to realize that the entire 1099 OID scheme was illegal and had not been approved by the IRS and that they had been sold a bill of goods. On February 11, 2011, the Aarons retained the services of J. G. Tax Group to represent them with the IRS.[3] At this point, Debra Aaron was trying to rectify the mistakes she had made. When she found out that the 1099 OID scheme was fraudulent and illegal, she made every effort to re-file legitimate tax returns on behalf of the 30 people she had filed original tax returns utilizing the 1099 OID scheme.

On May 7, 2013, only a few weeks before the indictment was unsealed, the Aarons spoke (not for the first time) with IRS Revenue Officer William Waight. He advised them to file an amended tax return for 2007 without the 1099 OID deductions and told them that their tax liability would be reduced to the $723,275 which had been unlawfully provided to

---

[3] The J.G. Tax Group apparently contains numerous ex-IRS employees and appears to be a legitimate business concern. See: http://www.jgtaxgroup.com/.

DEFENDANT'S SENTENCING MEMORANDUM - 9
(Debra Aaron, CR13-00168-MJP)

LAW OFFICE OF TIMOTHY R. LOHRAFF
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

them.  They followed his recommendation and filed the correct amended tax return on May 22, 2013. The indictment was unsealed on May 29, 2013, so the corrected return was filed before they were ever aware of criminal charges.

All of the returns that Mrs. Aaron filed through the FIRE account were on behalf of people who similarly believed in the 1099 OID scheme as preached by Winston Shrout and other professional speakers.  Mr. and Mrs. Aaron never conducted a tax avoidance seminar; and never provided handouts, DVD's or materials advocating 1099 OID schemes.

In short, the people whose returns they filed were people who were making their own measured and independent decision to file tax returns utilizing the 1099 OID deduction scheme.  Mrs. Aaron facilitated the filing of said returns by using the Jennick Inc. FIRE account.

**B.      Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct.**

There have been a number of prosecutions in the Western District of Washington regarding the exact same charges that Debra Aaron has been convicted of or similar charges involving defendants using false deductions under the 1099 OID schene and receiving illegal refunds.

For example in *United States v. Donald Mason*, CR09-00407JCC, Mr. Mason was charged with Theft of Public Money in violation of 18 U.S.C. § 641 and 2.  Mason submitted false tax documents to the government.  Mr. Mason did not readily plead guilty and admit his guilt.  He not only forced the government to trial, but as the government stated in its sentencing memorandum in the case, Mr. Mason "[i]s not simply guilty of the offense. He comes before this Court defiant, a streak that he had displayed throughout his case." (Government's Sentencing Memorandum p. 2 in *U.S. v. Mason* attached as Exhibit 9). Indeed, according to the government's sentencing memo, Mason continued to argue that the government owed him money even after trial and before sentencing.

DEFENDANT'S SENTENCING MEMORANDUM - 10
(Debra Aaron, CR13-00168-MJP)

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

1

2     According to the government's sentencing memo, Mason attempted to steal nearly

3     $700,000 from the United States Treasury. (Exhibit 9, p. 1).  Mr. Mason's guidelines

4     offense level was 20 for an advisory range of 33 to 41 months.  Despite his conduct and the

      government's alleged concern about the fact that the "[I]RS continues to be flooded with

5     fraudulent returns from this scheme and the scheme continues to be promoted," the

6     government recommended the low-end of the advisory range of 33 months, which was what

7     he was sentenced to. (Exhibit 9, p. 10).

8         Perhaps the  case that appears to be most similar to the facts and circumstances of

9     Mrs. Aaron's case is *United States v. Wonita Chung*, CR10-00328JCC.  Ms. Chung pled

10    guilty to a count of conspiracy with the object of the conspiracy being Theft of Government

11    Funds, in violation of 18 U.S.C. § 641 and False, Fictitious or Fraudulent Claims in

12    violation of 18 U.S.C. § 287.

13        According to the government's sentencing memorandum, participants in the tax scam

14    in that case sought over $760,000,000 in fraudulent returns from the IRS. (Government

      Sentencing Memorandum in *U.S. v. Chung*, p. 2, attached as Exhibit 10).  The government

15    notes in the sentencing memo that Chung hosted and helped organize meetings in Canada

16    where co-defendant Ronald Brekke (a professional purveyor of tax fraud schemes similar

17    to Winston Shrout) and others promoted the scheme. Participants at the meetings Chung

18    hosted filed over $3.3 million in fraudulent returns. The IRS issued checks totaling over

19    $1.4 million in the Chung group. (Exhibit 10, p. 2).

20

21        Chung's guidelines offense level was 31 with a sentencing range of 108 to 135

22    months.  Because she pled guilty to a conspiracy count, her exposure was limited to 60

23    months.  The government noted that "Wonita Chung bears great responsibility for her

      actions. She was a willful participant in a serious and far-ranging conspiracy. Participants

24    from the meetings she organized alone sought over $3.3 million in fraudulent

25    returns....moreover, general deterrence is very important in cases such as these. The same

26

tax scam underlying this conspiracy has appeared nationwide, and in other parts of Canada as well." (Exhibit 10, p. 5).

Despite the fact that Chung's offense level was 31; that she directly hosted and participated in meetings with one of the tax scam purveyors; and that her case involved $3.3 million of intended loss; the government recommended a prison sentence of only 18 months for Ms. Chung.[4]  (Exhibit 10, p. 5).  The sentencing court sentenced her to 18 months in prison.

### C.      Other Factors Support a Sentence of Probation With House Arrest.

18 U.S.C. § 3553(a) also requires the Court to consider a sentence that will afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mrs. Aaron has to be one of the most unlikely defendants to re-offend that has ever appeared before this Court.  Her age, her education, her medical condition and her remorse make it extremely unlikely that she will ever violate the law again.

### 1.      Extraordinary Family Circumstances

The Ninth Circuit has consistently recognized a sentencing court's ability to depart down substantially to impose probation in cases where there are extraordinary family circumstances or where incarceration would have a harsh effect on other family members. Of course, post *Booker*, the Court no longer has to engage in nimble gymnastics to impose a sentence it finds fair and just under the case law now in effect.

Mrs. Aaron's health issues, and Mr. Aaron's health issues mitigate for a sentence of probation with house arrest.  If Mrs. Aaron is incarcerated, Mr. Aaron will face a serious, life-threatening and debilitating disease without his wife to help him on a daily basis with

---

[4]  The AUSA who wrote the sentencing memorandum in Ms. Chung's case was Mr. Thomas Woods, who is also prosecuting Mrs. Aaron's case.

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

chores that are essential to his well-being.

In *United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005), the Ninth Circuit found no abuse of discretion when the sentencing court departed eight levels down to impose probation on a defendant in a case involving $500,000 in embezzlement.

Similarly, in other pre-*Booker* cases, in *United States v. Leon*, 341 F.3d 1122 (9th Cir. 2003) and *United States v. Aguire*, 214 F.3d 1122 (9th Cir. 2000), the Court upheld departures based upon extraordinary family circumstances such as a suicidal wife suffering from renal failure and an eight year old son who had lost his father and would lose his mother were she sent to prison for a substantial sentence.

This was a non-violent crime that did not involve guns, drugs or potential harm to any citizen or agent.  There is absolutely no danger to the public in sentencing Mrs. Aaron to federal probation with house arrest.

The Aarons have been paying restitution through the government taking money from their pensions and have now paid back $170,896 of the $723,275 they owe.  They will continue to pay back the restitution and it is expected that the complete restitution will be paid back in this case (unlike many other cases where the Court and the government realize there will never be any restitution recovered).

## IV.   GUIDELINE PROVISIONS

The PSR incorrectly calculates the final offense level as 26 with a CHC of I. (Final PSR, ¶27).  While Mrs. Aaron does not contest that the base offense level is 6, with a proper increase of 20 levels for the amount of loss, she does dispute that she was a manager or supervisor and that the criminal activity involved more than five or more participants under USSG § 3B1.1(b) for an upward adjustment of three additional levels.

U.S. Probation and the government find, therefore, that the adjusted offense level is 29 and the final offense level is 26 with three levels off for acceptance of responsibility with an advisory range of 63 to 78 months.  The defense argues that the adjusted offense level

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

DEFENDANT'S SENTENCING MEMORANDUM - 13
(Debra Aaron, CR13-00168-MJP)

should be 26 with three levels off for acceptance of responsibility for a final offense level

of 23 with an advisory range of 46 to 57 months.

## A.      Manager or Supervisor Under USSG §3B1.1(b)

U.S. Probation adds three levels to Mrs. Aaron's offense level for being a manager

or supervisor under USSG §3B1.1(b).  The defense objects to this upward adjustment.  Mrs.

Aaron was not supervising or controlling the 30 people she agreed to file tax returns for.

They were all people who were believers in the world of 1099 OID schemes as developed

by paid speakers who presented at  seminars and lectures being given around the United

States and who distributed  DVD's and written materials at the lectures and seminars that

people paid to attend.  An example of these professional speakers is Winston Shrout.

In *United States v. Whitney*, 673 F.3d 965 (9th Cir. 2012), a similar case, the Ninth

Circuit held that a two level upward adjustment under this guideline section was

inappropriate for a defendant convicted of the exact same charge as Mrs. Aaron:   a count

of conspiracy to defraud the government under 18 U.S.C. § 286.

The Court noted that "[u]nder this circuit's clear articulation of 3B1.1(c), 'even a

defendant with an important role in an offense' cannot receive an enhancement unless there

is also a 'showing that the defendant had control over others.' *United States v. Lopez-

Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998). This renders conduct which may have been

integral to the success of the criminal enterprise *see United States v. Harper*, 33 F.3d 1143,

1151 (9th Cir. 1994) or conduct that reflects a high degree of culpability *United States v.

Hoac*, 990 F.2d 1099, 1111 (9th Cir. 1993) insufficient to support a leadership enhancement

unless the defendant also exercised the requisite control over others." *Whitney*, 673 at 975.

(Emphasis added).

Like the defendant in *Whitney*, there is no evidence in the record that Mrs. Aaron

exercised any control over the 30 people she filed false tax returns for.  They were all

independent adults who made their own decision to file tax returns under the aegis of the

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
DEFENDANT'S SENTENCING MEMORANDUM - 14
**Seattle, WA 98154**
(Debra Aaron, CR13-00168-MJP)
**(206) 940-6523**
**Lohrafflaw@gmail.com**

1099 OID scheme.  Mrs. Aaron did not make the decision for them whether to file the false returns or not, she simply facilitated the filing by making use of her FIRE account.  Under *Whitney*, this is not enough to come under USSG 3B1.1(b).

**B.     Changed Nature of The Sentencing Guidelines**

The U.S. Supreme Court in a ground breaking series of decisions from *United States v. Booker*, 543 U.S. 220 (2005), to *Gall v. United States*, 552 U.S. 38 (2007) to *Rita v. United States*, 551 U.S. 338 (2007), has made it clear that not only are the Sentencing Guidelines no longer mandatory, they are no longer even presumptively reasonable. Federal sentencing courts are required to perform an independent analysis under the 18 U.S.C. § 3553(a) factors prior to fashioning a tailor-made sentence for each individual defendant. Federal sentencing courts are no longer bound by a 'one-size-fits-all' sentencing schemata, in which a defendant's numerical criminal 'box score' serves as the mandatory sentencing range.

The Ninth Circuit has clearly recognized the independence of sentencing courts based on those decisions: "'the point of *Kimbrough'* was 'a recognition of district court's authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case.'" *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010) (citing *Spears v. United States*, 129 S.Ct.840, 843) (emphasis in original).

Mrs. Aaron's request for probation with the first 24 months served as home detention is specifically allowed by the advisory guidelines.  U.S.S.G. § 5B1.3(e)(2) sets forth conditions of probation,  states that home detention may be imposed as a condition of probation but only as a substitute for imprisonment.

Home detention is further defined in U.S.S.G. § 5F1.3 for defendants sentenced to a term of probation, but only as a substitute for imprisonment.  The guidelines define "home detention" as "a program of confinement and supervision that restricts the defendant to his

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

DEFENDANT'S SENTENCING MEMORANDUM - 15
(Debra Aaron, CR13-00168-MJP)

1   place of residence continuously, except for authorized absences, enforced by appropriate

2   means of surveillance by the probation office.   When an order of home detention is

3   imposed, the defendant is required to be in his place of residence at all times except for

4   approved absences for gainful employment [etc.]" Application Note 1.

5   **V.    CONCLUSION**

6   Mrs. Aaron fully and completely accepts responsibility for her criminal actions in

7   filing a false tax return and helping others to do so.  It was a very aberrant mistake in a long

8   lifetime of being a professional, a student and a mother.  The request for five years

9   probation with the first 24 months spent on house arrest is not made lightly or

10  disrespectfully.  Society's goals are not advanced by putting Mrs. Aaron in a federal prison

11  at this stage of her life.

12  For all of the above reasons, Ms. Araon respectfully requests that this Court sentence

13  her to a term of probation for 60 months, the first 24 months to be spent on home detention.

14  DATED this 26th day of June, 2014.

15                                           Respectfully submitted,

16                                           *s/Timothy R. Lohraff*
                                             Bar No. 32145
17                                           Attorney for Debra Aaron
                                             1001 Fourth Avenue, Suite 3200
18                                           Seattle, WA   98154
                                             206/940-6523
19                                           Lohrafflaw@gmail.com

20

21

22

23

24

25

26

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
**1001 Fourth Avenue, Suite 3200**
**Seattle, WA 98154**
**(206) 940-6523**
**Lohrafflaw@gmail.com**

DEFENDANT'S SENTENCING MEMORANDUM - 16
(Debra Aaron, CR13-00168-MJP)

### CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2014,  I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following:

> Thomas Woods & Kate Vaughan
> Assistant United States Attorney
> 700 Stewart Street, Suite 5220
> Seattle, WA 98

> Timothy R. Lohraff
> WSBA # 32145
> Attorney for Debra Aaron
> 1001 Fourth Avenue, Suite 3200
> Seattle, WA   98154
> Telephone:  (206) 940-6523
> Lohrafflaw@gmail.com

**LAW OFFICE OF TIMOTHY R. LOHRAFF**
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154
(206) 940-6523
Lohrafflaw@gmail.com

DEFENDANT'S SENTENCING MEMORANDUM - 17
(Debra Aaron, CR13-00168-MJP)